IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CECLIA TATE,
Guardian of Adaisyah Coley,
on behalf of Estate of Derick Coley                                    PLAINITFF

V.                              CASE NO. 4:20-CV-558-BSM-BD

ARKANSAS DEPARTMENT
OF CORRECTIONS, *et al*.                                        DEFENDANTS

**RECOMMENDED DISPOSITION**

I.    **Procedure for Filing Objections:**

This Recommendation has been sent to Judge Brian S. Miller. Any party who

disagrees with the findings or conclusions set out in the Recommendation may file

objections. To be considered, objections must be filed within 14 days. Objections should

be specific and should include the factual or legal basis for the objection.

If no objections are filed, Judge Miller can adopt this Recommendation without

independently reviewing the record. If the parties do not file objections, they may waive

any right to appeal questions of fact.

II.    **Background:**

On May 26, 2020, attorney Verona Swanigan filed a purported class action civil

rights complaint on behalf of 113 inmates in the Cummins Unit of the Arkansas Division

of Correction (ADC)[1]; the estate of an inmate who died while incarcerated at the

---

[1] Other than being housed at the same ADC unit at the time they filed this lawsuit,
Plaintiffs have failed to provide specific information regarding the 113 inmate-Plaintiffs.

Cummins Unit; and the guardian of the deceased inmate's minor child. In their original complaint, Plaintiffs sued a number of Defendants associated with the ADC, including: the ADC itself; Aundrea Culclager, Warden of the Cummins Unit[2]; Wendy Kelley, former Secretary of the ADC; and Jane and John Doe correction officers 1-100. All inmate-Plaintiffs[3] claim that Defendants violated their rights by placing them at an increased risk of exposure to the novel coronavirus (COVID-19)[4] at the Cummins Unit. The Plaintiffs' cases are currently consolidated, with *Tate* designated as the lead case. (Doc. No. 2)

On June 5, 2020, this Court recommended that Judge Miller: dismiss claims against the ADC, with prejudice; dismiss claims for money damages against Defendants in their official capacities, with prejudice; dismiss claims of denial of access to the courts, without prejudice; and dismiss claims of denial of access to the grievance procedure, without prejudice. (Doc. No. 5)

---

Accordingly, the Court cannot conclude that they have met the prerequisites necessary to proceed as a class under Federal Rule of Civil Procedure 23.

[2] The Clerk is directed to correct the spelling of Defendant Aundrea Culclager's name on the docket sheet.

[3] The Guardian of Adaisyah Coley was obviously not subjected to the conditions complained of in Plaintiffs' amended complaint.

[4] Plaintiffs refer to the novel coronavirus as "Covid-19" in their papers. Defendants refer to the virus as "COVID-19" in theirs. In order to be consistent throughout this Recommendation, as well as with other cases in this district, the Court will refer to the novel coronavirus as COVID-19, even when directly citing Plaintiffs' papers. See *Frazier v. Kelley*, *et al.*, Case No. 4:20-CV-434 (E.D. Ark. 2020) and *Schuler v. Hutchinson*, *et al.*, Case No. 2:20-CV-97 (E.D. Ark. 2020).

Subsequently, Plaintiffs filed an amended complaint that corrected some of the defects identified in this Court's June 5 recommendation and added new ADC Defendants as well as medical Defendants. (Doc. No. 7) After Plaintiffs filed their amended complaint, Judge Miller rejected the June 5 recommendation, as moot. (Doc. No. 8)

On July 20, 2020, Defendants Culclager and Kelley moved to dismiss Plaintiffs' claims against them. (Doc. No. 11) On August 3, 2020, Defendants Bradshaw[5], Broomfield, Byers, Crawford, Culclager, Felts, Gass, Glover, Kelley, Magness, Payne, Ricketts, Wade, and Walker moved to dismiss Plaintiffs' claims against them. (Doc. No. 19) Plaintiffs responded to the motions, and Defendants replied to the responses.[6] (Doc. Nos. 23, 24, 53) The motions are now ripe for review.[7]

---

[5] In their response to the Defendants' second motion to dismiss (Doc. No. 19), Plaintiffs concede that their claims against Defendant Bradshaw should be dismissed. (Doc. No. 24 at p.17)

[6] In their response to Defendants' motion, Plaintiffs note that Defendants previously indicated that their motion to dismiss was rendered moot by the filing of an amended complaint. Plaintiffs are correct that Defendants made such a statement in an email attached to Plaintiffs' motion for extension of time. (Doc. No. 14-1 at p.2) Defendants' motions to dismiss, however, were filed after Plaintiffs filed their amended complaint. (Doc. Nos. 7, 11, 19) Accordingly, the Plaintiffs' amended complaint did not render the Defendants' motion to dismiss moot.

[7] Defendants Sgt. Wade, Robinson, Murray, Merrill, Chadick, Adam, Haynes, Jenkins, King, Merrel, Nurse Q., Scott, and the Doe Defendants have not yet been served with process. (Doc. Nos. 28-33, 46-51) The Court provided Plaintiffs until October 30, 2020, to serve all Defendants. (Doc. No. 55) Now pending is Plaintiffs' motion for additional time to serve all Defendants (Doc. No. 58) The Court, however, addresses all of the Plaintiffs' claims in this Recommendation.

III.  <u>Analysis</u>:

A.  <u>Factual Allegations in Plaintiffs' Amended Complaint</u>

One hundred thirteen Plaintiffs in these consolidated cases were inmates at the

Cummins Unit when the COVID-19 outbreak began. Of those inmates, Plaintiffs set out

specific factual allegations in their amended complaint as to only three: Hernando

Traylor; Derick Coley; and Alvin Aikens.

Hernando Traylor contracted COVID-19 on an unspecified date. <u>Unidentified

ADC officials</u> denied Mr. Traylor "access to health care and to personal protections from

COVID-19 including hand sanitizer, masks, clean hot water, and soap." (Doc. No. 7 at

p.5) In addition, <u>unidentified ADC officials</u>: denied him access to medication; forced him

to sleep in a barracks alongside inmates who had tested positive for COVID-19; and

failed to adequately clean and sanitize his cell, despite the presence of black mold. As a

result of these conditions, Mr. Traylor allegedly suffered and continues to suffer

breathing difficulties.

Plaintiff Derick Coley died on an unspecified date as a result of COVID-19.

According to Plaintiffs' allegations, Mr. Coley suffered "substantial pain" and

"psychological harm" prior to his death. (Doc. No. 7 at p.6) Plaintiffs allege that

<u>unidentified ADC officials</u> failed to provide Mr. Coley with "hot water, a clean and

sanitized environment, masks, gloves or hand sanitizer or soap to clean himself or his

area." (Doc. No. 7 at p.16) In addition, "Defendants jointly and severally failed to

provide Coley with sufficient and effective medical care, provide healthy food, isolate

him from other inmates and guards, and to take any CDC recommendations to protect Mr. Coley from contracting the infectious disease." (Doc. No. 7 at p.16)

Plaintiff Alvin Aikens "made verbal and written requests for medical assistance with his breathing and for personal protections."[8] (Doc. No. 7 at p.10) Defendants James, Wade, Crawford, Walker, Nurse Q., Jenkins, and Nurse Merrel allegedly denied those requests. As a result, "Plaintiff Aikens progressively became worse, and still has long lasting effects of breathing discomfort, wheezing, and chest pains at night." (Doc. No. 7 at p.10)

Plaintiffs further allege that, since March 1, 2020, there have been seven "wholly preventable deaths," including the deaths of inmates Danny Woods, Derick Cooley,[9] and Ronnie West. (Doc. No. 7 at p.18) Plaintiffs do not specifically allege that inmates Woods and West died as a result of complications of COVID-19. Significantly, neither of their estates is named as a plaintiff in this case.[10]

All other allegations in the Plaintiffs' amended complaint relate generally to all 113 inmate-Plaintiffs. Plaintiffs allege that unidentified officers and medical personnel at the Cummins Unit: "deliberately ignored and neglected" Plaintiffs' "serious medical and

---

[8] Plaintiffs never allege that Plaintiff Aikens actually contracted COVID-19.

[9] The Court assumes that Plaintiffs are referring to Derick Coley.

[10] The Plaintiffs specifically allege that, "[t]he fact that the prison is a closed environment and located in a remote and excluded location should have made it easy for the ADC Defendants to prevent the spread of the disease and to protect the inmates, if they had implemented and complied with the CDC recommendations and had an emergency health plan." (Doc. No. 7 at p.19) They do not allege, however, that deceased inmates Wood or West contracted COVID-19, much less that they died of the virus.

psychological needs"; denied Plaintiffs "access to information to help prevent the spread of COVID-19"; denied Plaintiffs access to "clean and unused masks"; failed to provide Plaintiffs with adequate hand sanitizer or soap; failed to provide Plaintiffs with gloves; failed to provide Plaintiffs with hot/warm drinking water; failed to provide Plaintiffs with "medication or vitamins to treat COVID-19 symptoms"; failed to provide Plaintiffs healthy food; denied Plaintiffs "hospital visits when symptoms of COVID-19 were readily apparent"; denied Plaintiffs' requests to be examined by physicians when symptoms of COVID-19 were readily apparent; denied Plaintiffs testing for COVID-19 and follow-up testing when they were sharing quarters with inmates who had tested positive for COVID-19; denied Plaintiffs' requests for "surfaces in cells and common areas to be sanitized"; denied Plaintiffs' requests for "social distancing or segregation of those testing positive"; and "gave Plaintiffs negative write-ups if they failed to come to work as a result of the COVID-19 pandemic." (Doc. No. 7 at pp.6, 13-15, 23)

Plaintiffs also complain that <u>unidentified</u> "nurses and medical staff . . . refused to provide the [P]laintiffs with medications to alleviate their symptoms and failed to take COVID-19 positive inmates who were showing symptoms to the hospital or provide personal protections." (Doc. No. 7 at p.8)

As to named Defendants, Plaintiffs allege that Defendants Kelley, Culclager, and Ricketts were "aware of the Cummins Unit deficiencies and non-compliance with the CDC and the methods to prevent the spread of COVID-19 but took no action to remedy the deficiencies." (Doc. No. 7 at pp.7-8) They further allege that Defendant Payne, as Director of the Division of Correction, "failed to assure that the Cummins Unit has been

properly [and] adequately staffed for the health and safety of the inmates . . . exacerbat[ing] the spread and severity of COVID-19." (Doc. No. 7 at p.9)

Plaintiffs allege that Defendants Wade, Crawford, Walker, Nurse Q., Jenkins, and Nurse Merrel "individually and separately had interactions with [unspecified] Plaintiffs during which they were made aware that Plaintiffs were in distress and suffering from symptoms of COVID-19." (Doc. No. 7 at p.10) Plaintiffs also claim that the members of the Arkansas Board of Corrections (BOC), who "operated and maintained the Cummins Unit," failed to assure the proper training and supervision of employees at the Cummins Unit. (Doc. No. 7 at p.9)

According to Plaintiffs' amended complaint, unidentified Defendants: failed to "implement sufficient policies and procedures, both written and unwritten, to avoid Plaintiffs' exposure to COVID-19"; "had knowledge of the CDC guidelines regarding the COVID-19 virus"; and "failed to properly, and promptly, implement and follow CDC guidelines." (Doc. No. 7 at p.6) They complain that, from February through April 2020, unidentified Defendants failed to take "affirmative actions to keep the inmates away from each other by 6 feet, provide masks, have correctional officers tested before entry into the prison, provide hand sanitizer, provide the inmates with warm water to drink, or provide them with clean sanitized living conditions and water with soap to wash their hands regularly." (Doc. No 7 at pp.12, 14)

Plaintiffs allege that, once COVID-19 testing began at the Cummins Unit, one unidentified nurse tested unidentified inmates without changing gloves or washing her hands, after which unidentified contaminated inmates were not isolated from other

inmates. (Doc. No. 7 at p.15) According to Plaintiffs' allegations, "[o]ver 80 people were diagnosed with COVID-19 after they were tested with the cross contaminated gloves by one [unidentified] nurse." *Id.* Once Plaintiffs were provided masks, <u>unidentified ADC officers</u> forced them "to wear the same mask for over seven days without disinfecting the mask or cleaning the mask." *Id.*

Plaintiffs also make general statements regarding the lack of adequate staffing, including allegations that there were too few health care professionals at the Cummins Unit; but they provide no specific data to support this allegation. They also note the failure of <u>unidentified ADC officials</u> to conduct thorough investigations of the deaths that occur at "their facilities." (Doc. No. 7 at p.18)

Finally, Plaintiffs include several allegations regarding the conditions of <u>unidentified inmates</u> housed in solitary confinement. (Doc. No. 7 at pp.17-18)

B.  <u>Standard</u>

In deciding whether Plaintiffs have adequately stated claims for relief, the Court must assume that the allegations in the complaint are true and determine whether those allegations "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint cannot simply "[leave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Id.* at 561 (citation omitted). Rather, the facts set forth in the complaint must "nudge [the] claims across the line from conceivable to plausible." *Id.* at 570.

C.  Personal Liability

 "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (internal quotation marks and citation omitted). To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth specific factual allegations describing how *each defendant* violated the plaintiff's federally protected rights. "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Furthermore, a general allegation of "overall conditions" cannot support a constitutional claim for relief. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991).

In their amended complaint, Plaintiffs do not explain how individual Defendants violated each Plaintiff's rights; rather, most allegations refer generally to "Plaintiffs" and "Defendants." In the amended complaint, there are 113 inmate-Plaintiffs, 28 identified Defendants, and as many as 300 Doe Defendants. It is impossible to discern each Defendant's part in violating any individual Plaintiff's rights.

 Several flaws are fatal to Plaintiffs' claims. First, Plaintiffs allege that inmates Traylor and Coley contracted COVID-19 and that inmate Coley died as a result. They do not allege, however, that any of the other 111 inmates Plaintiffs contracted COVID-19 as a result of unconstitutional conditions at the Cummins Unit. Furthermore, Plaintiffs do not state whether any of the Plaintiffs suffered from underlying medical conditions; nor do they identify the inmates (other than Separate Plaintiff Aikens) who suffered from a medical need or requested medical treatment.

9

Likewise, Plaintiffs do not identify the inmates who were allegedly forced to stay in living quarters with inmates who had tested positive for COVID-19. Plaintiffs complain about the conditions of inmates held in solitary confinement, but they fail to identify any Plaintiff who was actually housed in solitary confinement during times relevant to this lawsuit.

Furthermore, Plaintiffs fail to state which Defendants failed to provide which Plaintiffs: with information to prevent the spread of COVID-19; with clean face masks, hand sanitizer, soap, gloves, hot/warm drinking water, medication and vitamins to treat COVID-19 symptoms; or with healthy food. Likewise, they do not specify the Defendant or Defendants who denied individual Plaintiffs: access to hospital visits when symptoms of COVID-19 were apparent; medical examinations by physicians when symptoms of COVID-19 were readily apparent; testing and follow-up testing for inmates who shared quarters with inmates who had tested positive for COVID-19; or sanitation for surfaces in cells and common areas.

From the amended complaint, it is impossible to determine which Defendants allegedly denied which Plaintiffs' requests for social distancing or segregation from inmates who had tested positive. And Plaintiffs do not identify which Defendants gave which Plaintiffs negative write-ups for failing to show up for work.

In sum, except for inmate Aikens, Plaintiffs have failed to state how "each Government-official defendant, through the official's own individual actions . . . violated

the Constitution."[11] Therefore, Plaintiffs' claims against Defendants Robinson, Murray, Adam, Nurse King, Treleecia Merrill, Nurse D. Haynes, Dr. Scott, Sergeant Wade, Lieutenant Crawford, and Sergeant Walker, as well as claims against the Doe Defendants, fall short. *Iqbal*, 556 U.S. at 676.

In their amended complaint, Plaintiffs seek to hold Defendants Kelley, Culclager, Ricketts, Payne, and the members of the BOC liable based on their positions as supervisors. In cases brought under § 1983, supervisors are not liable for constitutional violations committed by their subordinates simply because they are their supervisors. *Ashcroft v. Iqbal*, 556 U.S. at 676; *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); see also *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability"). Without more factual allegations about each BOC member's actions, the Court cannot hold them in this lawsuit. It is not enough to allege that the BOC members are responsible for the general operation and oversight of the Cummins Unit. Therefore, Plaintiffs' claims against the BOC Defendants[12] should be dismissed, without prejudice.

A prison supervisor can be held liable, of course, for failing to train or supervise subordinates or for tacitly authorizing misconduct by failing to take corrective action

---

[11] Separate Plaintiff Aikens's claims against Defendants James, Wade, Crawford, Walker, Nurse Q., Jenkins, and Nurse Merrel are addressed later in this Recommendation.

[12] Those Defendants are Benny Magness, Bobby Glover, Buddy Chadick, Tyrone Broomfield, John Felts, William Byers, and Whitney Gass.

after learning of a violation. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). To state a claim for failure to train or supervise, however, there must be allegations: that the supervisor knew of a *pattern* of unconstitutional acts committed by the subordinate; that the supervisor demonstrated deliberate indifference to, or unspoken authorization of, constitutional violations committed by subordinates; that the supervisor failed to take appropriate remedial action after learning of a subordinate's misconduct; and that the plaintiff was injured as a result of the failure to properly train or supervise subordinates. *Parrish*, 594 F.3d at 1002; *Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997).

D.   Deliberate-Indifference

In their amended complaint, Plaintiffs attempt to state claims that Defendants Kelley, Culclager, Ricketts, and Payne acted with deliberate indifference to Plaintiffs' health and safety by failing to adequately train and supervise their subordinates.

"To establish an Eighth Amendment violation, a prisoner must show that the alleged deprivation, viewed objectively, is 'sufficiently serious' and that the prison officials' actions, viewed subjectively, demonstrate a 'deliberate indifference' to the prisoner's health or safety."[13] *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (citing *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998)). "The level of culpability

---

[13] Plaintiffs state that they also bring their deliberate-indifference claims under the Fourteenth Amendment. (Doc. 7 at p.22) The Fourteenth Amendment, however, applies to pre-trial detainees asserting constitutional violations and not to convicted persons such as Plaintiffs here. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011).

The standard for proving deliberate indifference is high. Under established law, defendants act with deliberate indifference only where they were aware of facts from which they *could have inferred* that plaintiffs faced a substantial risk of serious harm and where they *actually drew that inference. Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Even where prison officials or medical providers know of a substantial risk to inmate health or safety, they are not liable, "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

In evaluating these claims, the Court will take judicial notice of the findings of fact relevant to the claims in this case as stated by District Judge Kristine G. Baker in her decision denying inmate plaintiffs' motion for preliminary injunctive relief in *Frazier v. Kelley, et al*., Case No. 4:20-CV-434 (E.D. Ark. May 19, 2020).[14] In her thorough analysis, Judge Baker found, as summarized below:

1.  COVID-19 "is a disease caused by a novel coronavirus that began infecting humans in late 2019." (Doc. No. 68 at p.5)

2.  On March 11, 2020, the Word Health Organization declared COVID-19 a pandemic. (Doc. No. 68 at p.6)

3.  On the same day, Governor Hutchinson declared a state of emergency and President Trump declared COVID-19 a national emergency. (Doc. No. 68 at p.6)

---

[14] The Court has the discretion to take notice of items in the public record in ruling on a motion to dismiss**.** *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

4. On March 11, 2020, Defendant Kelley issued a memorandum containing the ADC's protocol to reduce the risk and spread of COVID-19 within ADC facilities. That memorandum "encouraged regular handwashing, covering coughs and sneezes, avoiding handshakes, continuing cleaning, and telling staff members to stay at home if ill." (Doc. No. 68 at pp.22-23)

5. "On March 16, 2020, the ADC suspended inmate visitation, regular and special visits, at all prisons and community correction centers in an effort to respond to COVID-19." (Doc. No. 68 at p.23) In addition, the ADC required inmates entering into new facilities to be housed together for 14 days following intake. (Doc. No. 68 at p.24)

6. As early as March 20, 2020, the ADC and Wellpath began "post[ing] signage in English and Spanish informing inmates of COVID-19 precautions and information requested by the ADH." (Doc. No. 68 at p.25; Doc. No. 36-1 at p.6)

7. On March 27, 2020, the ADH issued recommendations titled "COVID-19 Guidance for State Correctional Facilities and Local Detention Facilities," addressing the CDC's recommendations and provided "Arkansas-specific guidance." (Doc. No. 68 at p.23)

8. ADC officials began using a closed-circuit television program called the Morning Show in the ADC units to provide COVID-19 related information to inmates. (Doc. No. 68 at p.25)

9. ADC inmates were permitted to watch Governor Hutchinson's daily COVID-19 briefings. (Doc. No. 68 at p.25)

10. In the March 27 recommendations, the ADH recommended the use of personal protective equipment (PPE) for inmates. As a result, when the guidance was issued, the ADC began manufacturing cloths mask for inmates and staff, and distributed cloth masks and face shields. (Doc. No. 68 at p.26; Doc. No. 36-1 at p.9)

11. As of May 19, 2020, every ADC inmate housed in general population had received a cloth mask. (Doc. No. 68 at p.26) Because inmates housed in restrictive housing are detained in either one or two-man cells, they do not come into contact with other inmates, and have limited exposure to ADC staff members. (Doc. No. 68 at p.26) ADC staff members are directed to wear masks and gloves when interacting with inmates in restrictive housing. (Doc. No. 68 at p.27)

12. "The ADC obtained additional PPE from the Arkansas Department of Emergency Management and purchased PPE on the open market." (Doc. No. 68 at p.26)

13. The ADH issued additional guidance for correctional facilities on April 13, 2020, and again on April 15, 2020. (Doc. No. 68 at p.23)

14. On April 17, 2020, Kelley Garner, an Epidemiology Supervisor with the ADH toured the Cummins Unit. In her affidavit, she noted: the morning broadcast that was used to inform inmates about COVID-19; the signs posted throughout the facility to inform inmates and staff about ways to reduce the transmission of the virus; the cleanliness of the facility; the inmates' access to soap and water; all staff members wearing masks; and most inmates wearing masks. (Doc. No. 68 at pp.25-26; Doc. No. 36-11 at pp.2-3)

15. Inmates in the Cummins Unit do not have access to non-alcohol-based hand sanitizer. (Doc. No. 68 at p.29)

16. "Soap, warm water, toilet paper, hand towels, and bath towels are provided free of charge and are accessible by inmates in the ADC; the towels are laundered multiple times per week with inmates receiving clean towels when soiled towels are laundered." (Doc. No. 68 at p.30)

17. "The ADC has implemented procedures to encourage social distancing, including suspending congregational religious services, staggering meal times, requiring certain seating at meal times, postponing non-urgent medical services, modifying inmate transfer procedures, limiting the numbers of inmates going to commissary, recreation, medical pill call and other areas at one time, and educating inmates about the practice." (Doc. No. 68 at p.30)

18. Based on Defendant Payne's testimony at the May 7, 2020 hearing before Judge Baker, the Cummins Unit "has utilized library, school, and visitation areas to house inmates in an effort to aid social distancing." (Doc. No. 68 at p.31)

19. On April 12, 2020, the first ADC inmate tested positive for COVID-19. (Doc. No. 68 at p.34)

20. When the first inmates tested positive at Cummins, "samples were taken from inmates housed in the different barracks and then other inmates were tested." (Doc. No. 68 at p.34)

21. ADC officials tested nearly 1,700 inmates at the Cummins Unit. According to testimony provided at the hearing before Judge Baker, all "inmates have been informed of their test results and given guidance on best practices to avoid transmission and on seeking additional medical treatment." (Doc. No. 68 at p.34)

22. Based on test results, ADC officials testified that, "the ADC has restructured housing in compliance with ADH guidelines by separating COVID-19 positive, negative, and indeterminate inmates and assigning staff so that only certain staff work with each of these specific group of inmates to reduce the risk of exposure." (Doc. No. 68 at p.35)

23. ADC officials created a field hospital for COVID-19 positive inmates at the Cummins Unit to keep those inmates who need medical care separate from other inmates requiring medical attention. (Doc. No. 68 at p.35)

24. ADC officials have "implemented procedures to check inmates' temperatures to monitor for COVID-19 in its facilities." (Doc. No. 68 at p.36)

25. As of April 27, 2020, 856 inmates at the ADC's Cummins Unit were confirmed to have contracted COVID-19. (Doc. No. 68 at p.6)

26. "Two men from Cummins lost their lives to COVID-19 on May 1, 2020, and two more men from Cummins lost their lives to COVID-19 on May 3, 2020." (Doc. No. 68 at p.7)

Based on these facts, as well as the general nature of Plaintiffs' allegations in this case, the Court cannot conclude that Defendants Kelley, Culclager, and Ricketts were deliberately indifferent to Plaintiffs' health and safety.[15]

The Court is keenly aware of the significant health risks associated with COVID-19 and the ease with which this disease is transmitted, especially in a prison setting. Here, however, there is a lack of factual information about individual inmate-Plaintiffs, including whether individual inmates had underlying conditions; whether any suffered from any COVID-19 symptoms; whether and when they tested positive for COVID-19; whether they requested medication, medical care, or treatment; and which Plaintiffs were forced to live in cells with COVID-positive inmates. None of the inmate-Plaintiffs has sufficiently alleged that he is "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 83, or that any Defendant's response to a specific Plaintiff's needs was "obviously inadequate." *Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016).

While the Court is hesitant to conclude that Plaintiffs have satisfied the objective component of the deliberate-indifference standard, for purposes of analyzing the motions to dismiss, the Court will assume that Plaintiffs have established that they were housed in conditions that created a significant risk to their health and safety.

---

[15] In her Order denying the motion for preliminary injunctive relief, Judge Baker specifically stated that "plaintiffs have not demonstrated that they are likely to succeed on the merits of their Eighth Amendment claim." *Frazier v. Kelley*, Case No. 4:20-CV-434 (E.D. Ark. May 19, 2020).

According to the findings of fact articulated by Judge Baker, ADC officials took immediate action to respond to COVID-19. Beginning on March 11, 2020, the day that COVID-19 was declared an emergency, Defendant Kelley issued the first set of policies and practices to address the risk of COVID-19 spread within the ADC. Since March, Defendants have continued to update those policies and procedures. Furthermore, by mid-March 2020, ADC officials had begun to inform inmates, staff, and visitors about COVID-19. Shortly thereafter, ADC officials began posting signs throughout its facilities, in both English and Spanish, instructing inmates: to wash their hands; to wear facemasks as much as possible; to avoid touching their eyes, nose, or mouth without first cleaning their hands; to clean their personal items; and to maintain as much distance between each other as possible.

In mid-March, ADC officials also began limiting inmate visitation and restricting the movement of incoming inmates. Prior to the first inmate testing positive at the Cummins Unit, officials had already begun distributing masks and face shields to inmates. By mid-May, every ADC inmate had received a cloth mask.

Plaintiffs allege that these Defendants were "aware of the Cummins Unit deficiencies and non-compliance with the CDC and the methods to prevent the spread of COVID-19 but took no action to remedy the deficiencies." (Doc. No. 7 at pp.7-8) The Plaintiffs' allegations fall short of demonstrating that the Defendants' conduct in addressing COVID-19 was akin to "criminal recklessness."[16] At worst, Defendants

---

[16] See also *Young v. Whitmer*, No. 2:20-CV-68, 2020 WL 5405778, at *1 (W.D. Mich. Sept. 9, 2020) (dismissing plaintiff's eighth amendment claims for failure to state a claim

Kelley, Culclager, and Ricketts acted negligently in responding to COVID-19 at the Cummins Unit. Under settled law, negligent conduct—even grossly negligent conduct—fails to rise to the level of a constitutional violation. *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014).

Plaintiffs allege that Defendant Payne failed to adequately staff the Cummins Unit and thereby caused: "poor health and mental health care, lack of transportation, to the hospital, riots, extended time in solitary confinement, theft, violence against inmates[,] and failure to feed inmates timely and with fully healthy meals, all of which has exacerbated the spread and severity of COVID-19." (Doc. No. 7 at p.9) Again, Plaintiffs fail to identify any individual Plaintiff who was specifically subjected to the conditions listed. Furthermore, Plaintiffs do not allege that Defendant Payne intentionally failed to

---

because plaintiff failed to demonstrate deliberate indifference on the part of the prison officials in response to the COVID-19 pandemic); *Kesling v. Tewalt*, No. 1:20-CV-334-BLW, 2020 WL 4496495, at *2 (D. Idaho Aug. 4, 2020) ("[p]laintiff's allegations reveal that prison officials responded reasonably to the serious risk posed by [COVID-19] and, therefore, were not deliberately indifferent in violation of the Eighth Amendment"); *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (reversing the district court's granting of a preliminary injunction because plaintiffs were unlikely to succeed on the merits of their eighth amendment claim due to the reasonable response on the part of the prison officials to the risks posed by COVID-19); *Cameron v. Bouchard*, 815 F. App'x 978, 985 (6th Cir. 2020) (granting stay on preliminary injunction because "[t]he evidence Plaintiffs presented is insufficient to demonstrate that jail officials acted with reckless disregard to the serious risk COVID-19 poses. Indeed, the steps that jail officials took to prevent the spread of COVID-19 were reasonable."); and *United States v. Saenz*, No. 3:10-CR-30027-01-RAL, 2020 WL 4347273, at *6 (D.S.D. July 29, 2020) ("[t]he BOP has taken several steps agency-wide to curtail the spread of COVID-19 and to keep it from entering its facilities from outside sources . . . [t]hese efforts may not be able to totally prevent the spread of COVID-19 in FCI Fort Dix, but they certainly are not deliberately indifferent to the risks posed by the disease.").

staff the Cummins Unit. These allegations cannot support claims that Defendant Payne's staffing decisions approached "criminally reckless" conduct. At worst, Defendant Payne was negligent in failing to adequately staff the Cummins Unit.

Separate Inmate Plaintiff Aikens specifically alleges that Defendants James, Wade, Crawford, Walker, Nurse Q., Jenkins, and Nurse Merrel denied his requests for "medical assistance with his breathing and for personal protections." (Doc. No. 7 at p.10) As a result, he alleges that he "progressively became worse, and still has long lasting effects of breathing discomfort, wheezing, and chest pains at night." (Doc. No. 7 at p.10) There are no other facts alleged in the amended complaint to support Plaintiff Aikens's deliberate-indifference claim against these Defendants.

For example, the amended complaint does not state: how many times Plaintiff Aikens requested medical assistance from these Defendants; whether these Defendants were aware that Plaintiffs Aikens was having difficulty breathing; whether these Defendants intentionally denied Plaintiff Aikens's requests; whether Plaintiff Aikens was provided PPE; or whether Plaintiff Aikens actually contracted COVID-19. Without this information, the Court cannot conclude that these Defendants acted with "criminal recklessness" in addressing Plaintiff Aikens's medical needs. These allegations, assuming they are true, show that Defendants James, Wade, Crawford, Walker, Nurse Q., Jenkins, and Nurse Merrel were negligent or grossly negligent in attending to Plaintiff Aikens's medical needs. The allegations do not support a claim of deliberate indifference.

E.    Qualified Immunity-Individual Capacity Claims for Damages[17]

Qualified immunity shields public officials from civil liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (*en banc*) (internal quotation marks omitted). In other words, a plaintiff cannot hold officials liable for "bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (citing *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007)). Accordingly, courts must determine whether the facts alleged show the violation of a federally protected right and whether that right was clearly established at the time of the alleged misconduct. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

In this context, a *clearly established right* is one that, "a reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). This does not require a prior case involving

---

[17] Plaintiffs argue that the Court should not address the Defendants' qualified-immunity argument when ruling on the pending motion to dismiss. The Eighth Circuit recently rejected a similar argument in *Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020), reaffirming that, "[q]ualified immunity is an immunity from suit, not a mere defense to liability" and noting that, "the Supreme Court has repeatedly stressed the importance of resolving this issue at the earliest possible stage in litigation. Defendants are entitled to dismissal under Rule 12(b)(6) if they show they are entitled to qualified immunity 'on the face of the complaint.'" *Id*. at 972. (internal citations and quotations omitted). The Court notes that it has relied on items also found in the public record in assessing the Defendants' qualified-immunity argument. The Court, however, previously addressed that issue in this Recommendation. See also, *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (upholding grant of qualified immunity in lawsuit in which district court considered "matters of public record").

the precise situation; but there must be existing precedent making it clear that the propriety of conduct at issue is "beyond debate." *Dillard*, 961 F.3d at 1052 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, Plaintiffs have not pleaded facts showing that any Defendant violated their clearly established constitutional rights. This includes Plaintiffs Coley and Traylor. The issues and challenges posed by COVID-19 are unlike any other in the modern era. COVID-19 is, by definition, a "novel" coronavirus. Accordingly, the Court cannot conclude that reasonable officials would have known that the response to COVID-19 of officials at Cummins violated Plaintiffs' clearly established constitutional rights.

## III.    Conclusion:

The Court recommends that Defendants' motion to dismiss (Doc. No. 19) be GRANTED. Plaintiffs' claims should be DISMISSED, without prejudice. Defendants' first motion to dismiss (Doc. No. 11) should be DENIED, as moot. All remaining pending motions (Doc. Nos. 56, 58, 59) should be DENIED, as moot. The cases that were consolidated should now be unconsolidated.

DATED, this 9th day of November, 2020.

_____

UNITED STATES MAGISTRATE JUDGE